## John Roberts, Appellant, v. James McAllister, Appellee.

### Gen. No. 7,056.

1. LIFE ESTATES—*life tenant's death as affecting under tenant's right to crops.* A tenant holding under a life tenant has a right to sow annual crops, and, should the life tenant die before such crops are matured and harvested, the undertenant may mature, harvest and remove the same.

2. CROPS—*extent of right to emblements.* The right of emblements extends only to growing crops, together with the privilege of entering upon the land for the purpose of harvesting and removing the crops and does not include the occupancy of the demised premises.

3. LIFE ESTATES—*surrendering of possession by undertenant on death of life tenant as affecting right to crops.* Upon the death of a life tenant of land, her undertenant did not, by surrendering possession of the premises to the remaindermen upon notice, forfeit his rights to a growing crop of wheat, his interest in the wheat being that of ownership which was not affected in any degree by the termination of the life estate.

4. LIFE ESTATES—*liability of undertenant for rent of crop land after surrendering possession on life tenant's death.* Where the reversioners compelled a tenant holding under a life tenant by a lease for a lump sum rental to surrender the premises upon the death of the life tenant, they were not entitled to collect from him rent for a portion of the land on which he had a right of emblements as to a crop of wheat.

5. LANDLORD AND TENANT—*distress as condition prerequisite to taking possession of crop under lien.* Even if the owner of land has

a lien for rent on a crop growing thereon but belonging to another, he has no right to possession of the crop as against its owner when he has not distrained.

6. REPLEVIN—*right of undertenant to bring for crop surrendered on death of life tenant.* An undertenant who has been compelled to surrender the premises upon the death of the life tenant, and who has been prevented by the reversioners from harvesting a crop of wheat maturing after termination of his tenancy, is entitled to recover possession of the wheat in an action of replevin.

7. APPEAL AND ERROR—*disposition of appeal in replevin heard on agreed facts and questions of law.* Where the appeal in an action to replevin wheat has been heard upon a stipulation of facts and upon agreed questions of law and it is determined that plaintiff is entitled to possession of the wheat, there is no occasion to remand the cause for a new trial and the case will be reversed and remanded with directions to enter a judgment accordingly.

Appeal from the County Court of Peoria county; the Hon. ARTHUR C. FORT, Judge, presiding. Heard in this court at the April term, 1922. Reversed and remanded with directions. Opinion filed October 25, 1922. Rehearing denied January 4, 1923.

FRANK A. HALL, for appellant.

CAMERON & ANDERSON, for appellee.

MR. PRESIDING JUSTICE JONES delivered the opinion of the court.

Appellant instituted replevin proceedings against appellee for the possession of a crop of wheat. The suit was brought before a justice of the peace and later was taken by appeal to the county court of Peoria county, where it was tried on a written stipulation as to the facts and as to the points of law which were to be submitted to and determined by the court. A jury was waived and the court upon a hearing of the cause entered judgment in favor of the appellee. This appeal is from that judgment.

The material facts are: Sarah McAllister was the owner of a life estate in certain farm property. The appellee, James McAllister, and two other heirs of

James McAllister, Sr., were the owners of the reversion in fee. In September, 1919, Mrs. McAllister leased the said premises to appellant Roberts for a term of one year beginning March 1, 1920. In September, 1920, she again leased the said premises to Roberts for a further term of one year beginning March 1, 1921. Both leases were in writing and the agreed rental to be paid by Roberts was evidenced by his certain promissory notes payable to Mrs. McAllister. Roberts sowed a portion of the demised premises or about fourteen acres in wheat during October, 1920. The following December, Mrs. McAllister died. Thereupon notice was given by the said reversioners to appellant to vacate and surrender possession of all of the demised premises not later than March 1, 1921. Roberts complied with said notice and vacated the premises during the month of February, 1921. An apportionment of all rent due from Roberts to March 1, 1921, was made between the personal representatives of the life tenant and the reversioners. The notes given by Roberts for rent under his second lease were surrendered to him and he has not paid any rent since March 1, 1921. In April, 1921, the appellee purchased the interest of the other two reversioners. When the wheat was ripe and ready to cut, Roberts went upon the premises and began cutting it, whereupon, appellee stopped him and compelled him to get off of the land. Appellee proceeded to cut and harvest the wheat notwithstanding repeated demands made upon him by Roberts to permit the latter to harvest and take possession of the crop.

The points of law submitted by agreement of parties for the determination of the court are: (1) Is the plaintiff or the defendant the owner of the crop of wheat? (2) If the plaintiff is the owner of said crop of wheat did the defendant have a lien for rent after March 1, 1921? and (3) is the plaintiff entitled to recovery against the defendant?

There can be no question as to the right of a tenant holding under a life tenant to sow annual crops and should the life tenant die before such crops are matured and harvested, the undertenant may mature, harvest and remove the same. The right is called the right of emblements. It arises from force of necessity and public policy. It has for its purpose the encouragement of agriculture and the protection of the life tenant and the undertenant, if any there be. If the right of emblements did not exist, the remainderman or reversioner would become entitled to the growing crops immediately upon the death of the life tenant. This would deter and in many cases prevent the life tenant from putting the premises in crops or from underletting it to another. Life tenancies in farm lands would be of little value in many cases.

The right of emblements extends only to the growing crops together with the privilege of entering upon the land for the purpose of harvesting and removing the crops. It does not include the occupancy of the demised premises. In the case at bar the reversioners had a right to the possession of all the demised premises immediately upon the death of the life tenant, subject, however, to the right of Roberts to go upon the land to harvest and remove the said crop. They elected to avail themselves of their right to such possession and gave Roberts a notice to vacate the entire premises on or before the following March 1st. His compliance with their demand was a compliance with the law. However, he did not forfeit his rights to the growing crop of wheat. His interest in said crop of wheat at the date of death of the life tenant was that of ownership and this interest was not affected in any degree by the termination of the life estate. Roberts was at all times the owner of the wheat in question.

The rights of a life tenant or an undertenant to emblements was fully considered by us in *Woman's American Baptist Home Mission Society v. Rayburn,*

203 Ill. App. 577, wherein the prior decisions in this State upon the subject are fully reviewed.

We think that a decision upon the second point of law submitted to us is not necessary for the determination of the issues involved in this suit. Appellee can have no lien upon the crop in question unless the relation of landlord and tenant existed between the reversioners and the undertenant, or unless there was a privity of interest between them and the parties to the lease. (Section 31, Landlord and Tenant Act, Cahill's Ill. St. 1921; *Hoagland v. Crum*, 113 Ill. 365; *Murr v. Glover*, 34 Ill. App. 373.) Neither will a suit for distress for rent lie unless there is an express contract for a certain rent. (*Hatfield v. Fullerton*, 24 Ill. 278; 24 Cyc. 1282.) It cannot be ascertained from the record whether or not there was any certain rent agreed upon for the fourteen acres where the wheat was grown. It appears that the lease called for lump sum cash rental for the entire premises and it is manifestly impossible for us to hold there is a lien when the rent, if any, is uncertain in amount. If Mrs. McAllister in her lifetime had sown the wheat in question, her personal representatives would have had the right to harvest and remove the crop without paying any rent or damages for use and occupation to the reversioners. Of course if the undertenant remains in possession of the demised premises after the death of the life tenant with the consent of the reversioners or remainderman, the law will compel the undertenant to pay rent. (*Woman's American Baptist Home Mission Society v. Rayburn, supra; Humphreys v. Orrey*, 220 Ill. App. 523.) But the facts in this case and those in the cases just cited must be distinguished. In the cases cited the undertenant remained in possession of the premises after the death of the life tenant with the consent of the reversioner. In the instant case the undertenant was compelled by the reversioner to surrender up the possession of the premises after the

death of the life tenant.  So that he was not thereafter in possession of the premises or any portion of them. He simply had the right to go upon them and harvest and mature his crops.  Under the circumstances here presented there may be little difference between such a right and the right of actual possession of the land. If so, it is only because the growing crop was wheat and needed no cultivation in the Spring of the year. There is fundamentally a vast difference between a right to go upon land and remove a crop and the right to actual unqualified possession of the land.  One pertains only to the fruits of the land while the other pertains to the land itself.  If the relation of landlord and tenant did not exist between the reversioner and Roberts it was because the reversioner had terminated that relation.  He cannot be heard to say that the relation does not exist and at the same time invoke the statute in relation to landlord and tenant.  The reversioner had his election whether to treat Roberts as his tenant or to terminate his tenancy and he elected to terminate the tenancy.

The stipulation of facts in this case shows that after appellant had been given notice to vacate the premises he informed the appellee that he (appellant) would claim the crop as emblements and that he would pay no rent.  It is thus obvious that neither of the parties considered the relation of landlord and tenant to exist between them after March 1, 1921.  Each was claiming to be the owner of the crop in question.  It has been held in *Fender v. Rogers*, 97 Ill. App. 280, that even an action for use and occupation can never be maintained where the relation of landlord and tenant does not exist, except in certain cases as provided by statute.  (*Hill v. Coal Valley Min. Co.*, 103 Ill. App. 41; *Jackson v. Reeter*, 20 Ill. App. 29; section 1, ch. 80, Cahill's Ill. St. 1921.)  The second exception found in said section of the statute is: ''When lands are held and occupied by any person without any special

agreement for rent." This case cannot come within the said exception because Roberts did not hold and occupy the land on which the wheat was grown. He simply had the right to enter upon it and to harvest and remove the crop.

We are inclined to the view that the appellee was not entitled to a lien upon the wheat in question, because, first, both appellant and appellee disclaimed the relation of landlord and tenant; second, the relation of landlord and tenant did not exist between them; third, appellant did not hold and occupy the land upon which the wheat was grown after March 1, 1921, his rights being only those of ingress and egress for the purpose of removing the crop; fourth, appellee did not claim to be in possession of the wheat because of his lien but because of his claim of ownership; fifth, there can be no lien for emblements.

But even if appellee had a lien, he had not distrained, and, therefore, he had no right to the possession of the crop as against its owner.

Our decision as to the third point of law presented to us is that the plaintiff is entitled to recover against the defendant.

Whether a cause should be remanded for a new trial depends upon the circumstances of the particular case (*People v. Hartsig,* 249 Ill. 348), and since this case has been heard upon a stipulation of facts and upon agreed questions of law, there is no occasion to remand the cause for a new trial. It is therefore reversed and remanded to the trial court with directions to enter a judgment in favor of the appellant for the possession of the wheat in question and against the appellee for costs.

*Reversed and remanded with directions.*